# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

MOTION PRO, INC. a California corporation,

Plaintiff,

v.

UNITED STATES OF AMERICA;

OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE

ROBERT E. LIGHTHIZER, in His Official Capacity as
United States Trade Representative;

U.S. CUSTOMS & BORDER PROTECTION,

MARK A. MORGAN, in His Official Capacity as Acting
Commissioner of U.S. Customs & Border Protection,

Defendants.

</td><td>

Court No. 20-02732

</td></tr>
</table>

## COMPLAINT

Motion Pro, Inc. ("Motion Pro" or "Plaintiff"), by and through its attorneys (Foley & Lardner LLP), hereby states and alleges the following:

## STATEMENT OF THE CASE

1.   This action challenges the imposition of duties and the use of Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411, as it relates to certain imported goods from China.

2.   Specifically, Plaintiff alleges that Defendants' use of Section 301, as it relates to the imposition and collection of duties on Chinese-origin products covered by so-called "List 3" and "List 4," are not authorized under the Trade Act of 1974 and violate the Administrative Procedure Act ("APA"), 5 U.S.C. §551 *et seq.*, because they: (1) were imposed in an untimely fashion; (2) are inconsistent with the findings of the underlying Section 301

Report issued by the Office of the U.S. Trade Representative (the "Report"); (3) exceed the scope of any allowed remedy for the alleged Intellectual Property Practices found in the Report; (4) were imposed for reasons entirely unrelated to the Intellectual Property practices at issue; (5) were issued without any consideration of the thousands of comments submitted during the public comment process; and (6) are otherwise contrary to law.

## THE PLAINTIFF

3. Motion Pro is an importer of products covered by Lists 3 and 4, and expects to continue importing products that are covered by these Lists.

4. Motion Pro was the Importer of Record of various Chinese-origin goods that are covered by Lists 3 and 4, and directly paid duties for imports covered by these Lists. Thus, Motion Pro suffered a direct monetary loss due to the imposition of duties under Lists 3 and 4 and continues to suffer a direct monetary loss each and every time it imports Chinese-origin goods covered by List 3 or List 4.

## STANDING AND DEFENDANTS' STATUS

5. As the Importer of Record of Chinese-origin goods covered by Lists 3 and 4, Plaintiff has paid tariffs as a result of duties illegally imposed pursuant to List 3 and List 4. Plaintiff has, therefore, been adversely affected or aggrieved by agency actions within the meaning of the APA. 5 U.S.C. § 702 and 28 U.S.C. § 2631(i). Plaintiff therefore has standing to bring this claim.

6.      Defendant United States of America received the disputed tariffs, including tariffs paid by Plaintiff, and thus is the statutory defendant pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

7.      The Office of the United States Trade Representative ("USTR") is an executive agency of the United States Government charged with investigating a foreign country's trade practices under Section 301 of the Trade Act. The Office of the USTR is the agency that issued the Report and implemented (or otherwise oversaw the implementation of) Section 301, subject to the direction of the President. The Office of the USTR made numerous decisions regarding both List 3 and List 4 and otherwise caused the List 3 and 4 duties on Chinese-origin products to be imposed.

8.      Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the U.S. Trade Representative . In these capacities, he made numerous decisions regarding Lists 3 and 4.

9.      Defendant U.S. Customs & Border Protection ("CBP") is the U.S. Government agency that collects duties on imports. At the direction of the USTR and the President, CBP collected payments List 3 and 4 tariffs, including those payments made by Plaintiff, in accordance with the List 3 and List 4 tariffs imposed by the USTR.

10.     Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties under Lists 3 and 4, including those paid by Plaintiff.

## JURISDICTION

11.     This action is commenced against the United States, its agencies, or its officers and arises out of a law providing for tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue. As such, the Court of International Trade has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B).

12. Plaintiff has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. §702; *see* 28 U.S.C. §2631(i) ("Any civil action of which the Court of International Trade has jurisdiction ... may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 and List 4 adversely affected and aggrieved Plaintiff because Plaintiff was required to pay these unlawful duties.

13. Further, there is no other jurisdictional basis directly specified, whether under another sub-section of Section 1581 or otherwise. Because there is no other statutory basis for proceeding in this Court, the invocation of the residual jurisdiction of this Court pursuant to Section 1581(i)(1)(B) is appropriate.

## TIMELINESS OF ACTION

14. Any action brought under 28 U.S.C. § 1581(i)(1)(B) is timely if the Plaintiff commences the action at this Court "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

15. List 3 was first published in the Federal Register on September 21, 2018, under the title "Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation," 83 Fed. Reg. 47,974 (Sept. 21, 2018).

16.    Pursuant to that Federal Register publication, "[a]dditional duties at a rate of 10 percent ad valorem on the tariff subheadings set out in the Annexes to this notice [became] applicable with respect to products that [were] entered for consumption, or withdrawn from warehouse for consumption, on or after September 24, 2018." *Id.*

17.    Comments regarding the potential imposition of List 4 were first published in the Federal Register on May 17, 2019, under the title "List Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation. 84 Fed. Reg. 22,564, (May 17, 2019). The USTR subsequently imposed the List 4 duties in a later Federal Register publication titled, "Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation," 84 Fed. Reg. 43,304 (Aug. 20, 2019). Pursuant to that Federal Register publication, "[a]dditional duties at a rate of 10 percent ad valorem on the tariff subheadings set out in Annex A to this notice [became] applicable with respect to products that [were] entered for consumption, or withdrawn from warehouse for consumption, on or after September 1, 2019." *Id.*

18.    Thus, the action that is the subject of this Federal Register notice was first implemented on September 24, 2018 (List 3) and September 1, 2019 (List 4), respectively. The earliest date on which Plaintiff could have incurred liability is the date of publication for List 3. The action is, therefore, timely filed, because it is filed "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

## RELEVANT LAW

19.    19 U.S.C. § 2411(b), commonly referred to as "Section 301" because of its numbering in

the statutory form enacted, as well as 19 U.S.C. § 2412, collectively authorize the USTR to

investigate whether a foreign country has engaged in an "unreasonable or discriminatory"

practice that burdens or restricts U.S commerce.

20.    Section 301 grants the USTR authority to investigate any acts, policies, or practices of a

foreign country that violate, or are inconsistent with, or deny benefits under any trade

agreement or are "unjustifiable and burden[] or restrict[] United States Commerce." 19

U.S.C. § 2411(a)(1)(B). This authority only can be invoked pursuant to the constraints

imposed under Section 301, however, including the need for an investigation and report

regarding the unfair trade practices at issue and the implementation of a remedy designed to

counter the unfair trade practices identified in that investigation and report.

21.    Pursuant to 19 U.S.C. § 2411(c)(1)(B), the USTR may impose duties on imports from an

offending country if the investigation makes an affirmative determination. The imposition

of such duties must be "in an amount that is equivalent in value to the burden or restriction

being imposed by that country on United States commerce." 19 U.S.C. § 2411(a)(3).

22.    Pursuant to 19 U.S.C. § 2414(a)(2)(B), the USTR must determine what, if any, action to

take, by a "date that is 12 months after the date on which the investigation is initiated. The

statute does not contemplate or otherwise provide for any extension of this deadline.

23.    On August 18, 2017, the USTR undertook an investigation into China's alleged unfair

Intellectual Property policies and practices pursuant to its Section 301 authorities. Under

Section 301, the USTR was required to determine, within 12 months of the initiation of that

investigation, what responsive action (if any) it should take. 19 U.S.C. § 2414. Despite that requirement, the USTR did not issue either List 3 or List 4 until well after the expiration of that 12-month period. Although the Trade Act permits the USTR to *modify* or *terminate* any action taken with respect to the USTR's Section 301 findings, any such action must be taken consistent with "the acts, policies, and practices, that are the subject of such action." 19 U.S.C. § 2417(a)(1)(B). Despite that requirement, the issuance and implementation of both Lists 3 and 4 reflect actions taken by Defendants that exceed that express authority.

24. In addition to acting contrary to the Trade Act, Defendants also violated the APA by not providing interested parties with sufficient opportunity to comment regarding the proposed List 3 and List 4 tariffs. *See* 5 U.S.C. §551 *et seq*. Further, the USTR asserted that the basis of the imposition of the List 3 and List 4 duties was an alleged "increase" of harmful Chinese Intellectual Property practices, thereby increasing the burden on U.S. commerce, while advancing no factual foundation or other support for that allegation.

25. Finally, the USTR did not even attempt to comply with the APA's notice and comment requirements. Despite receiving more than 6,000 comments regarding the List 3 and 4 tariff lines and associated tariff classifications under consideration for inclusion on List 3, and an additional 3,000 comments regarding tariff lines and associated tariff classifications under consideration for final inclusion in List 4, the USTR never provided any explanation of how it reviewed those comments, evaluated those comments, or factored those comments into its analysis when promulgating the final version of List 3 and List 4. To this day, there is no record concerning how – or even if – the USTR considered or took into account these comments when promulgating its final determination and imposition of the tariffs for these two Lists.

## RELEVANT FACTS & PROCEDURAL HISTORY

26.    In August 18, 2017, the USTR initiated its investigation into Chinese technology transfer and intellectual property practices. *See* U.S. Trade Representative, "Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation," 82 Fed. Reg. 40,213 (Aug. 24, 2017).

27.    On March 28, 2018, the USTR published its Report announcing the results of its investigation "Findings of the Investigation Into China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974" (Mar. 22, 2018), https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. The Report concludes that the investigated Intellectual Property practices of the Chinese government were unreasonable and discriminatory and burden or restrict U.S. commerce. *Id.* at 47.

28.    On June 20, 2018, the USTR published a Federal Register titled "Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation" imposing an additional 25 percent ad valorem duty on selected products of China. 83 Fed. Reg. 28,710 (June 20, 2018). This is the so-called "List 1" and is not alleged to be a violation of Section 301 as part of this Complaint.

29.    On August 16, 2018, the USTR published the Federal Register "Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation," imposing an additional 25 percent ad valorem duty

on selected products of China. 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018). This is the

so-called "List 2" and also is not alleged to be a violation of Section 301 as part of this

Complaint.

30.    List 1 and List 2 collectively imposed duties on an estimated $50 billion of annual imports

of Chinese-origin products. At the time, the USTR judged these duties sufficient to offset

the alleged Intellectual Property violations found in the Report.

31.    China subsequently retaliated against the imposition of the List 1 and List 2 duties by

imposing its own duties on various U.S.-origin goods.

32.    In an explicit response to China's retaliation, and without reference to the Chinese

technology transfer, intellectual property, or innovation policies documented in the Report,

the USTR subsequently proposed imposing further duties on additional Chinese-origin

products. U.S. Trade Representative, "Request for Comments Concerning Proposed

Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices

Related to Technology Transfer, Intellectual Property, and Innovation," 83 Fed. Reg.

33,608, 33,609 (July 17, 2018). A contemporaneous statement by USTR Robert Lighthizer

regarding the Section 301 action confirms that the additional tariffs went beyond the initial

Intellectual Property issues documented in the Report and were intended to put pressure on

China to "open[]its market to U.S. goods and services." Statement By U.S. Trade

Representative Robert Lighthizer on Section 301 Action (July 10, 2018), *available at*

https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

33.    Related public statements by the President state that the additional duties were tied to the

trade imbalance between the United States and China. *See*, *e.g.*, @realDonaldTrump,

TWITTER (July 10, 2018, 9:17 PM EDT),

https://twitter.com/realDonaldTrump/status/1005982266496094209; @realDonaldTrump,

Twitter (July 25, 2018, 7:01 AM EDT),

https://twitter.com/realDonaldTrump/status/1022074252999225344.

34.    In an August 1, 2018 statement, the USTR cited China's allegedly illegal retaliation against

the United States and announced that it would impose an additional 25 percent ad valorem

duty on selected products of China. Office of the United States Trade Representative,

"Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action" (Aug.

1, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-

releases/2018/august/statement-us-trade-representative.

35.    On September 17, 2018, President Trump announced that he had directed the USTR to

impose 10 percent additional tariffs on $200 billion of imports from China.

https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/. These

additional tariffs were explicitly linked to China's decision to "impose new tariffs in an

effort to hurt the United States economy" and explicitly referenced concerns completely

unrelated to Intellectual Property concerns, such as protecting the interests of farmers and

ranchers. *Id*.

36.    On September 21, 2018, the USTR published the final list of affected products subject to the

additional List 3 duties. U.S. Trade Representative, "Notice of Modification of Section 301

Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual

Property, and Innovation," 83 Fed, Reg, 47,974 (Sep. 21, 2018). In issuing this notice, the USTR failed to respond to any of the more than 6,000 comments that it received regarding List 3 or any of the testimony provided by roughly 350 witnesses participating in the public comment process. *Id*. Nor did the USTR provide any indication that it ever considered or even reviewed these comments and the related testimony. *Id.* Given that the President announced the action would be coming just eleven days after the final comments were submitted, it is highly unlikely that it even was possible for the USTR to review 6,000 comments and 350 witness statements, let alone take them into account when making in its final decision to implement List 3. *See* Statement from the President (Sept. 17, 2018), https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.

37. The USTR's publication of List 3 on September 21, 2018 occurred more than 12 months after the initiation of the investigation on August 24, 2017.

38. In its September 21, 2018 Federal Register notice, the USTR acknowledged that the action was being taken more than one year after the start of the investigation, but attempted to justify the action as a "modification" of the existing Section 301 action because supposedly the burden or restriction on United States commerce of the acts, policies, and practices that are the subject of the Section 301 action had continued to increase, including following the one-year investigation period. The Federal Register notice also stated that Chinese retaliation made the existing action no longer "appropriate," citing "Section 307(a)(1)(C)," 19 U.S.C. § 2417(a)(1)(C).

39. Despite these arguments, the USTR never undertook any study of the alleged "increase" in the burden on U.S. commerce and did not give any further details. Instead, the USTR

alleged that there was an "increase" in the burden on U.S. commerce, without any studies, any support, or any factual findings regarding how or why this "increased" burden on U.S. commerce allegedly occurred. To date, the USTR has never released any information documenting this alleged "increase" in the burden on U.S. commerce, other than this one, unsupported statement.

40.    On May 17, 2019, the USTR announced its intention to proceed with the implementation of additional Section 301 duties on additional products that would eventually become List 4. U.S. Trade Representative, "List Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation," 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). The rationale for List 4 was not related to China's policies with respect to technology transfer, intellectual property, or innovation, however. Instead, the stated purpose of List 4 was to punish China for its failure to meet specific commitments made in bilateral trade negotiations with the United States and its alleged "further retaliatory action against U.S. commerce." *Id.*

41.    Participants subsequently submitted nearly 3,000 comments regarding List 4 during the USTR's public comment process.

42.    On August 20, 2019, the USTR published a Federal Register notice stating that it would implement these additional tariffs in two phases that would become List 4A and List 4B, respectively. U.S. Trade Representative, "Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation," 84 Fed. Reg. 43,304 (Aug. 20, 2019). The USTR again relied on Sections

307(a)(1)(B) and (C) for the stated authority to "modify" its prior action. Like the previous Federal Register notice for List 3, however, this Federal Register notice did not identify Chinese Intellectual Property, technology transfer, or innovation practices as the rationale for imposing the List 4 tariffs. Nor did it provide any analysis of the alleged "increase" in the alleged burden on U.S. commerce by the supposed Intellectual Property practices that were identified in the original Report. Rather, the Notice referred to China's defensive actions including retaliatory tariffs. *Id*.

43. In implementing List 4, the USTR failed to respond to any of the more that 3,000 comments that it received regarding List 4 or any of the testimony provided by roughly 350 witnesses participating in the public comment process. *Id*. Nor did the USTR provide any indication that it ever considered or even reviewed these comments and the related testimony. *Id.*

44. Like the publication of List 3, the USTR's publication of List 4 on August 20, 2019 occurred more than 12 months after the initiation of the investigation on August 24, 2017.

45. All duties on Chinese-origin products imposed under List 3 and List 4 remain in place. Although the proposed duties on products covered by List 4B were suspended, President Trump continues to threaten to impose them based upon China's actions. *See*, *e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618. These List 4B duties could immediately be applied to imported goods at the President's direction.

## STATEMENT OF CLAIMS

## COUNT 1: DECLARATORY JUDGMENT

46. Paragraphs 1 through 45 above are reincorporated by reference.

47.    The Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

48.    The USTR engaged in errors of law and misapplied the governing statute in the following ways:

a.    The USTR failed to take action to impose duties on List 3 and List 4 products from China within the 12-month period required by 19 U.S.C. § 2414(a)(1)(B) and (2)(B).

b.    The USTR failed to base the imposition of Section 301 duties on Chinese products covered by List 3 and List 4 on the acts or policies found to in its report to "burden or restrict" U.S. commerce, as required by 19 U.S.C. § 2411(b)(1).

c.    Although the USTR may "modify or terminate" a Section 301 action when the burden on U.S. commerce from the investigated unfair policies or practices investigated increases or decreases, it may not increase the duties assessed in furtherance of Section 301 for reasons other than the acts, policies, or practices that were found to burden U.S. commerce. The USTR acted unlawfully by modifying the action for other reasons, including for the purpose of retaliating against China and compelling China to import more U.S. goods.

d.    The USTR failed to provide any support for the alleged "increase" in the burden on U.S. commerce, thereby depriving its determination of any rational basis or support as required by the statute.

49.    Section 301 actions may be modified or terminated when no longer appropriate, as specified in 19 U.S.C. § 2417(a)(1)(C). This authorization does not permit the USTR to increase an

existing remedy action. Rather, the USTR is only authorized to decrease, remove, or pause the existing action.

50. Plaintiff is, therefore, entitled to a declaratory judgment that the duties imposed on products of China covered by List 3 and List 4 are ultra vires, contrary to law, and void ab initio.

## COUNT 2: APA VIOLATIONS

51. Paragraphs 1 through 45 above are incorporated by reference.

52. The APA requires that this Court invalidate any final agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

53. The USTR's imposition of List 3 and List 4 duties more than 12 months after the initiation of the investigation is in excess of statutory authority and is without the observance of procedure required by law.

54. The USTR's imposition of List 3 and List 4 duties for reasons other than China's policies relating to technology transfer, intellectual property, and innovation is in excess of statutory authority and is arbitrary, capricious, and abuse of discretion.

55. The USTR's imposition of List 3 and List 4 duties, without any support for its finding that China's alleged Intellectual Property violations were imposing an "increased" burden on the U.S. economy was merely asserted. The USTR failed to offer any evidence for the alleged "increased burden" from China's Intellectual Property policies and practices, and

accordingly failed to provide a reasoned decision on the record regarding a required element under the statute.

56.     The USTR's actions accordingly were promulgated without a reasonable basis and without the required statutory support, making the issuance of Lists 3 and 4 to be ultra vires, contrary to law, and void ab initio.

57.     The USTR also promulgated Lists 3 and 4 in an arbitrary and capricious manner because it did not provide a sufficient opportunity for comment, failed to meaningfully consider any submitted comments, failed to explain its consideration of these comments, and failed to adequately explain, on the record, its rationale for Lists 3 and 4 in light of these comments.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A.     Declare the imposition and collection of List 3 duties to be contrary to the law and, therefore, in violation of the Trade Act and the APA;

B.     Declare the imposition and collection of List 4 duties to be contrary to the law and, therefore, in violation of the Trade Act and the APA;

C.     Declare that Defendants' actions resulting in the placement of tariffs, and their collection, on products covered by Lists 3 and 4 are unauthorized by, and contrary to, the Trade Act;

D.     Vacate the List 3, and List 4 actions and rulemaking;

E.     Order Defendants to refund, with interest as provided by law, all duties paid by Plaintiff in accordance with List 3 and List 4;

F.     Permanently enjoin Defendants from collecting further duties on importations by Plaintiffs of merchandise from China that is included in List 3 and List 4;

G.    Permanently enjoin Defendants from implementing List 4B or collecting any duties under that suspended List;

H.    Order Defendants to pay costs and reasonable attorneys' fees; and

I.    Grant such other relief as may be just and proper.



Respectfully submitted,


/s/ Gregory Husisian
Gregory Husisian


Foley & Lardner LLP
Suite 600
3000 K Street NW
Washington, DC 20007
202.945.6149
ghusisian@foley.com

Counsel to Motion Pro, Inc.